IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DOUGLAS L. MANLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GLENN BABICH, | ) |
| RACHELL DODD, | ) Case No. 23-cv-3982-DWD |
| PHIL MARTIN, | ) |
| DANIEL CONN, | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| DR. TRAN, | ) |
| KAYSEE GOSNELL, | ) |
| | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Douglas L. Manley, a former inmate of the Illinois Department of Corrections (IDOC) who is now on parole, brought a civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was incarcerated at Robinson Correctional Center. *See Manley v. Conn., et al.*, Case No. 23-cv-3146-DWD. Upon initial review of Plaintiff's pleading, the Court allowed him to proceed on several claims and identified a different set of claims to sever into a new action. The above-captioned action is the severed case. Upon severance, Plaintiff was invited to inform the Court if he wished to proceed with this severed matter. He failed to properly express his intent and was given a second opportunity to clarify. (Docket entry 8). On April 22, 2024, the Court received Plaintiff's First Amended Complaint (Doc. 9), which

contains the severed claims and additional allegations. The Court will treat this as an affirmative expression of his desire to proceed, and it will now review Plaintiff's pleadings.

Plaintiff has applied to proceed *in forma pauperis* ("IFP") in this action (Doc. 3), so his Amended Complaint (Doc. 9) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915(e)(2)(B). Under Section 1915(e)(2)(B), the Court is required to screen complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915(e)(2)(B)(i-ii). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Background

In the Memorandum and Order severing a claim into this new action, the Court severed "Claim 7," a portion of Plaintiff's original complaint that concerned neck and shoulder issues as well as a pinched nerve. (Doc. 1 at 24-25). In the same Order, the Court had also noted that Plaintiff mentioned problems with dental care during his incarceration, but he did not associate those allegations with named actors, so no claims about that topic were designated. (Doc. 1 at 3).

## The Amended Complaint

Plaintiff alleges that on February 4, 2022, he entered the IDOC and underwent medical, mental, and dental health screenings. (Doc. 9 at 5). At the time he had several

broken teeth and several that were deteriorated and caused pain, headaches, and vision loss. It was determined by x-ray that some teeth needed to be extracted. Plaintiff believed the extraction would occur when he was transferred from the Reception and Classification prison to Robinson, and he was given Tylenol to manage pain in the interim. (Doc. 9 at 5-6). Plaintiff arrived at Robinson on February 25, 2022, and was informed that if he had medical issues he should sign up for sick call. He alleges the sick call process at Robinson was not approved, and instead, Defendant Dodd invented a procedure that did not comply with IDOC directives.

On April 1, 2022, Plaintiff saw Dr. Tran and informed him of his broken teeth and severe pain. (Doc. 9 at 7). Dr. Tran provided Ibuprofen and said extractions would be performed at an unspecified future date due to inadequate staffing. Plaintiff faults Defendant Dodd for failing to ensure the availability of adequate dental care in compliance with administrative directives. After seeing Dr. Tran, Plaintiff contracted an infection in one of his broken teeth and was given amoxicillin. He remained in severe pain, so he filed a grievance on August 3, 2022, about his ongoing need for dental care. Plaintiff claims that after filing his grievance, on August 14, 2022, he was called to the medical unit and on August 15, 2022, he was to have the upper teeth extracted by Tran. He would then be scheduled at a future date for the lower teeth.

Despite these developments, Plaintiff alleges that Defendant K. Gosnell caused him harm by inappropriately delaying her response to his grievance beyond the 24 hours dictated by administrative directives. He alleges Gosnell delayed from August until September 19, 2022, causing him further harm. (Doc. 9 at 8).

Despite receiving an extraction on August 15, 2022, Plaintiff was still in pain because he had other afflicted teeth. He submitted requests about his persistent pain and asked to meet with Defendant Martin and non-party Evans about his constant pain. On November 5, 2022, the dental assistant informed him he was on the list for extractions, but the date was unknown. (Doc. 9 at 9). On November 15, 2022, Plaintiff wrote a letter to Defendant Conn of Wexford explaining his dental and medical problems. Conn did not personally respond, but Wexford issued a generic response on February 10, 2023. (Doc. 9 at 9). Plaintiff faults Conn for turning a blind eye to his issue. He claims he submitted a second letter March 1, 2023, and got a generic response sent April 6, 2023, but received May 10, 2023. This led him to believe his mail was intercepted.

Despite the allegations about the letters, Plaintiff admits that on November 15, 2022, he got the second of the needed extractions, which alleviated his toothache pain. (Doc. 9 at 10). Despite this relief, he never got dentures. He faults Defendants Dodd, Martin, Dr. Tran, and Conn for allowing him to suffer in pain for 10 months.

On September 11, 2022, Plaintiff submitted a sick call request about numbness down his left shoulder to his hand and fingers. (Doc. 9 at 10). He was called to be seen September 19, 2022, which he claims was too long of a wait per administrative directives. Plaintiff explained his symptoms to an unknown nurse and was given Tylenol, but nothing to address the numbness or tingling. He was also placed on the doctor's list. Ten days later he got a call pass to see Dr. Glen Babich. He claims this also occurred too late per directives.

On September 29, 2022, Babich indicated he believed the cause of Plaintiff's symptoms was a pinched nerve, but he ordered x-rays to further investigate. (Doc. 9 at 11). Babich also ordered a neurologist consultation for the shoulder/neck/arm pain. During the visit, Plaintiff also complained of cellulitis on his leg and foot which caused a large piece of his skin to fall off, leaving an open wound. Babich indicated it was difficult to properly assess the cellulitis during a video visit but did not make other arrangements to investigate. Instead, Babich directed the nurse to apply ointment and to wrap the leg wound daily until it healed. Plaintiff claims Babich should have sent him to an outside hospital to assess his recurrent cellulitis instead of directing in-house treatment. (Doc. 9 at 11).

On October 9, 2022, Plaintiff placed a sick call request for his cellulitis and shoulder problems but got no response. On October 11, 2022, he had x-rays but he was still in severe pain. He submitted another request about his cellulitis on October 12. On October 13, 2022, he got a call pass to see Dr. Babich again about his arm and leg. Dr. Babich reiterated the difficulty of virtually examining Plaintiff's leg. At the October 13 visit, the x-rays were not yet back. Plaintiff alleges Dr. Babich made some improper comments about catheter exchange rules (a main subject of Plaintiff's original case before this Court), which Plaintiff felt were improper. Based on the comments, Plaintiff terminated the visit.

On November 17, 2022, Plaintiff saw Dr. Babich again at which time he determined the cause of his pain to be a pinched nerve in his neck. Dr. Babich directed therapy, and a visit with a neurologist to correct the issue, but Plaintiff alleges the therapy did not

happen.  Plaintiff includes some unrelated commentary about other medical needs, and faults Defendants Martin and Dodd for the care not meeting appropriate standards.

On December 7, 2022, Plaintiff submitted medical requests again about the therapy Babich ordered and his ongoing or recurrent cellulitis issues.  (Doc. 9 at 13).  On December 15, 2022, Plaintiff saw Babich and Babich told him that he should have already started therapy for his pinched nerve.  Despite learning the therapy had not started, Plaintiff faults Babich for failing to coordinate with Defendant Martin about the lack of therapy.  Babich also prescribed Plaintiff Cembalta to address his shoulder pain.  (Doc. 9 at 13).  As Plaintiff was leaving the medical unit, he alleges Martin entered and he inquired about a bladder exam and the therapy.  Despite reiterating his desire for the bladder or prostate exam, he alleges Martin never scheduled it.  He does not give details about what Martin said concerning the shoulder/neck therapy.

Plaintiff claims that in late December he started to experience side effects from the Cembalta so he asked for alternative treatment.  On January 22, 2023, Plaintiff submitted a request about his shoulder and the Cembalta.  At medical line that day, a non-party nurse told him he was on the doctor list but could not stop taking the medication until he could be seen.  Plaintiff was ultimately not seen again until March 13 despite inquiring multiple times earlier about his issues with Cembalta.  (Doc. 9 at 14).  At some point he stopped taking the Cembalta of his own accord.

Plaintiff saw a nurse on sick call line, but as of April of 2023, he still had not received a doctor's visit.  He made multiple additional requests for care.  Eventually on April 24, 2023, Plaintiff saw Dr. Becker.  Becker ordered additional x-rays, which took

place the following day. On May 3, 2023, Plaintiff attended a call pass about his neck/shoulder issues but was never provided the results. (Doc. 9 at 15).

Plaintiff was released from Robinson on May 26, 2023. (Doc. 9 at 16).

Plaintiff alleges that Defendants Dodd, Martin, Tran, Babich, and Conn (the president of Wexford) were deliberately indifferent to his needs by refusing to provide him with a neurologist appointment after one was recommended by Dr. Babich and Dr. Becker. He claims this caused him to suffer needless pain for eight months. He further alleges that IDOC and Wexford intentionally disregarded IDOC policies and directives, as well as state and federal laws. He alleges Robinson is understaffed, and there is a lack of participation and funding from Wexford. He claims there is a deficiency in the care provided by Wexford. Plaintiff seeks monetary damages. (Doc. 9 at 17). In support of his pleading, he submitted a variety of exhibits.

Based on the allegations in the Amended Complaint, the Court will designate the following claims:

> **Claim 1:** Eighth Amendment deliberate indifference claim against Dr. Babich for failing to ensure a timely implementation of his plan of care for Plaintiff's neck/shoulder/arm/nerve pain;
>
> **Claim 2:** Eighth Amendment deliberate indifference claim against Dodd and Martin for their role in managing Plaintiff's access to care for his shoulder/neck/arm/nerve issue;
>
> **Claim 3:** Eighth Amendment deliberate indifference claim against Dr. Tran for delaying dental care;
>
> **Claim 4:** Eighth Amendment deliberate indifference claim against Defendants Gosnell, Dodd, or Martin for their handling of Plaintiff's access to dental care;

> **Claim 5:** Eighth Amendment deliberate indifference claim against Defendant Conn for turning a blind eye to Plaintiff's two letters;
>
> **Claim 6:** *Monell* claim against Wexford Health Sources, Inc. for their alleged failure to supply adequate care at Robinson.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

In addition to the claims enumerated above and discussed below, Plaintiff made a variety of additional allegations in his complaint that were not related to the majority of the allegations or were not sufficient to state a claim. For example, he made passing references to a conversation with Dr. Babich about catheters, and a conversation with Defendant Martin about some kind of bladder or prostate exam by an outside provider, but neither of these issues are associated with the bulk of the allegations and they are not sufficient as presented to sustain a freestanding claim. In fact, these allegations are more closely related to issues that were already reviewed by the Court and allowed to proceed in Plaintiff's initial lawsuit, *Manley v. Conn, et al.*, Case No. 23-cv-3146, so these allegations will not be considered further in association with this case.

Plaintiff also discusses cellulitis and a skin wound in association with Dr. Babich, but he says when Dr. Babich first learned of the issue during a September 29, 2022, video visit, he directed staff to apply ointment and wrap the wound daily. (Doc. 9 at 11). The issue appears to have been discussed a second time with Babich on October 13, 2022, but Plaintiff admits he terminated that visit early because he became upset with comments Babich made about catheters. Though Plaintiff alleged he continued to experience cellulitis issues in December, or the issues returned in December, he says nothing more about Babich's handling of the issue. On these facts, at most it can be said that perhaps Dr. Babich was negligent in his approach to the cellulitis, but not that he was deliberately indifferent. Plaintiff alleges Dr. Babich should have sent him to a hospital for the issue to be examined, but an inmate is not entitled to demand specific care. The allegations about cellulitis are insufficient and shall not proceed.

There are also many more general allegations about the adequacy of care at Robinson. Plaintiff repeatedly faults Defendants Dodd and Martin for the inadequacies, but the mere role as a supervisor or high-level administrator at a facility does not equate to personal responsibility for an individual inmate's experience. *See e.g.*, *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (prison officials do not have a free-floating obligation to correct issues). At minimum, Plaintiff needs to establish that these individuals knew of the problems he personally faced and refused to act in the face of a serious potential harm. He alleges as supervisors they should have known of things like staffing inadequacies and scheduling delays, but he does not establish that he actually

alerted them to the problems he faced.  To the extent he has more specific allegations concerning Dodd or Martin, those allegations are discussed below.

**Claim 1**

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component.  *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010).  A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard).  *Id.*  To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference.  *Id.*  Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care.  *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).  If an inmate alleges a delay in treatment, he must present verifying medical evidence that the delay, and not the medical condition itself, cause some harm.  *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013).  He must also show it was the defendant's actions or inaction that caused the delay in treatment.  *Walker*, 940 F.3d at 964.

At most, Plaintiff alleges that Dr. Babich did not adequately ensure that the follow-up therapy or neurologist visit was scheduled for his pinched nerve.  He indicates that Dr. Babich directed therapy in October of 2022, and knew at their visit in December of 2022 that therapy had yet to begin.  At the December appointment, Dr. Babich started

Cembalta to manage Plaintiff's nerve/shoulder pain. Plaintiff tried to seek follow-up care and ultimately discontinued the Cembalta shortly after beginning it because of side-effects. However, Plaintiff never saw Dr. Babich again after the December 2022 visit. Against this backdrop, Plaintiff cannot establish that Dr. Babich was deliberately indifferent to his needs because he does not establish how Dr. Babich was personally responsible for the scheduling issues, nor does he establish Dr. Babich failed to respond to his problems with Cembalta.

### Claim 2

Plaintiff faults Warden Dodd and Healthcare Unit Administrator Martin for their roles in delaying or denying his access to the care prescribed by Dr. Babich for his shoulder—specifically therapy or a neurology consultation. He theorizes that both had a duty to maintain a functional healthcare unit at Robinson and to ensure healthcare was provided consistent with Administrative Directives. He provided many examples of instances where he believed his access to care did not meet directives, such as sick call requests not being reviewed in a timely fashion, and appointments not being scheduled in a timely fashion. While Plaintiff may be correct that there were differences between the written policies on healthcare and the care he received, the failure of a prison official to follow a local prison rule or an administrative directive is insufficient to state a constitutional claim under § 1983. See *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects from constitutional violations, not violations of state laws or departmental regulations or policies).

Aside from the allegations about the sick call process not meeting local rules or directives, Plaintiff does not make specific allegations against Dodd in association with his neck/shoulder issues. He does not, for example, allege that he submitted grievances about his neck/shoulder that she reviewed and failed to investigate. At most he complains of repeatedly submitting sick call requests about his neck/shoulder issues, but there is no indication that Dodd as the Warden would have been aware of these or would have played any role in the handling of any such requests. As such, Plaintiff has not established that Dodd has personal responsibility for any of the allegations concerning his neck/shoulder issues.

Turning to Martin, Plaintiff faults Martin for the same slow processing of sick call requests. He also alleges that after his December 13, 2022, appointment with Dr. Babich, he encountered Martin while exiting the healthcare unit. He asked Martin what was going on with a bladder or prostate exam, and the therapy he was supposed to have for his shoulder. (Doc. 9 at 13). Plaintiff provides no further information about Martin's response to his query about the neck/shoulder therapy. Given the lack of information directly linking Martin to Plaintiff's neck/shoulder issues aside from a single ambiguous conversation, the allegations are insufficient to maintain a deliberate indifference claim against him.

**Claim 3**

Plaintiff faults Dr. Tran for delaying needed dental extractions from April 1, 2022, through November 15, 2022. Specifically, he alleges that when he arrived at Robinson it had already been determined he needed extractions and dentures, but he had to wait 30

days to see Tran, about 4.5 months for the first extractions, and an additional 3 months for the second set of extractions. He never got dentures before his May 26, 2023, release from custody. During this time, Dr. Tran prescribed Tylenol or Ibuprofen for his pain, but otherwise knew Plaintiff was suffering and did not act. A few weeks after initially seeing Tran on April 1, 2022, Plaintiff contracted an infection in his mouth that was treated with antibiotics. Plaintiff faults Tran for being aware of his need for emergent care but failing to act.

The deliberate indifference standards described in association with Claim 1 apply equally to a dental care claim. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). A delay in treatment may support an Eighth Amendment claim if it exacerbated the dental injury or caused unnecessarily prolonged suffering. *Id.* At this early juncture, reading the complaint broadly in Plaintiff's favor, he may proceed against Dr. Tran related to the delays in his extraction of teeth, which he alleges resulted in an infection and unnecessary pain. However, the Court notes that ultimately the viability of this claim will turn on a close examination of the evidence surrounding the seriousness of Plaintiff's dental issues, the adequacy of Dr. Tran's approach, and Dr. Tran's involvement in scheduling.

**Claim 4**

Plaintiff faults Defendants Gosnell, Dodd and Martin for their handling of the dental care issues. As to Gosnell, Plaintiff faults her handling of his grievance about his dental issue, attributing at least a 46-day delay to her mismanagement of the grievance relative to prison policies. As was explained above, the violation of a prison policy itself is not sufficient to sustain a § 1983 claim. Additionally, the mere mishandling of a

grievance is insufficient to support a claim. *See Owens v. Hinsley*, 635 F.3d 950, 954 (7th Cir. 2011) (the mere mishandling of a grievance by an official who did not otherwise participate in the underlying constitutional violation is not sufficient to state a claim). Additionally, Plaintiff states that Gosnell received his grievance on August 5, 2022, and he had his first of two extractions on August 15, 2022. Against this backdrop, it also appears that Gosnell's handling of the grievance had nothing to do with the timeliness of care received. As such, there is no sufficient claim against Gosnell.

As to Dodd and Martin, Plaintiff's allegations concerning dental care focus on the notion that Robinson did not adequately follow Administrative Directives about the provision of dental care, or their implementation and use of a local sick call policy was somehow improper and delayed his care. Whatever merit these theories may have, they are insufficient to proceed because claims about following state or institutional directives are not adequate under § 1983. In sum, Claim 4 is insufficient in full and it will be dismissed without prejudice for failure to state a claim.

### Claim 5

Plaintiff faults Defendant Daniel Conn, an executive for Wexford Health Sources, Inc. (the prison health contractor), for turning a blind eye to his correspondence about his medical issues at Robinson. He claims he sent Conn a letter on November 15, 2022, and got a generic response three months later. He discusses Conn in the section of his complaint associated with dental problems, but he sent Conn the first letter on the same day he received the second set of needed extractions, so at that point it is not apparent there was anything for Conn to do about the dental issues. He alleges he submitted a

second letter to Conn on March 1, 2023, "describing the continuation of the same issue that was still taking place" (Doc. 9 at 9), but it is not clear what issue he is referring to by this letter. Both letters are appended to the amended complaint (Doc. 9-1 at 17-26). The first letter contains a single mention of needing a bad tooth extracted, and the second letter speaks only of bladder and catheter issues but makes no mention of dental problems.

On the available evidence and allegations, it is not clear that by the time Conn received Plaintiff's correspondence, there was any action to be taken about his dental issue. Plaintiff mentioned his bad tooth in a single paragraph of the first six-page letter, and he did not further press it in his second letter. Furthermore, the dental issue was resolved nearly simultaneous to the transmission of the first letter, so there was nothing more for Conn to do. The letters also make no mention of Plaintiff's neck/shoulder issues, so they were insufficient to attribute personal responsibility to Conn for turning a blind eye to those issues. In sum, Plaintiff's amended complaint and evidence are insufficient to maintain a claim against Conn.

<u>Claim 6</u>

Plaintiff named Wexford Health Sources, Inc., as a defendant in this matter, but he provided very few factual allegations specifically targeted at illuminating Wexford's role in the provision of care for his dental or shoulder/neck issues. At most, Plaintiff alleges that Wexford provided generic responses to his correspondence to Defendant Conn. Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the

corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).

Two generic responses to letters are not enough to show an express policy, widespread practice, or custom of Wexford that caused a violation of Plaintiff's constitutional rights. In the conclusion section of the amended complaint, Plaintiff summarily alleges that he believes Wexford intentionally disregards IDOC policies and directives, as well as federal and state laws. The only aspect of this allegation that might support a § 1983 claim would be a violation of federal law, but Plaintiff has not explained what policy, custom, or practice Wexford held that directly impacted his experience and caused a constitutional violation. He additionally alleges that a "lack of participation and funding from Wexford," may be a cause for the difficulties he faced. (Doc. 9 at 16-17). He adds that there are "other reasons" that the care he received was deficient, reasons that may be illuminated by reports prepared by special monitors in class action litigation against IDOC concerning healthcare. Finally, he alleges, "however evidenced, and what ever the reasons may be; there is certainly a health care deficiency between Wexford, the IDOC, RCC and the patients that are in their care." (Doc. 9 at 17). These summary allegations are insufficient to establish that Wexford should be held liable for a discrete

custom, policy, or practice that harmed Plaintiff. Therefore, Claim 5 shall be dismissed as insufficiently pled.

## Motions

Plaintiff's Motion to Proceed *In Forma Pauperis* (Doc. 3) is **GRANTED**. Plaintiff avers that he has essentially no source of appreciable income, so he qualifies to proceed without pre-payment of a filing fee. 28 U.S.C. § 1915(a)(1). Plaintiff's Motion for Summons (Doc. 4) is also **GRANTED**. The Court will initiate service in this case by soliciting waivers of service from the defendants against whom claims are proceeding, as explained below.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 3** of the Amended Complaint (Doc. 9) survives against Defendant Dr. Tran. By contrast, **Claims 1-2, and 4-5** are **DISMISSED** as to Defendants Dr. Babich, Rachell Dodd, Phil Martin, Daniel Conn, Wexford Health Sources, Inc., and Kaysee Gosnell. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Dr. Babich, Dodd, Martin, Conn, Wexford and Gosnell because there are no valid claims sufficient to proceed against these defendants.

The Clerk of Court is **DIRECTED** to prepare for Defendant Dr. Tran: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 9), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the

forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: May 23, 2024                                                                 /s *David W. Dugan*
                                                                                                        _____
                                                                                                        DAVID W. DUGAN
                                                                                                        United States District Judge


### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.